Filed 5/20/21 P. v. Gomez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NORMA LISA GOMEZ,<br><br>Defendant and Appellant. | F079355<br><br>(Fresno Super. Ct. Nos. F19901645 & F14900092-2)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County. Michael G. Idiart, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Norma Lisa Gomez committed a series of offenses, repeatedly violated probation, parole, and postrelease community supervision (PRCS), and subsequently entered into a negotiated disposition. She was sentenced to a second strike term of four years in prison. On appeal, defendant contends the matter must be remanded for the trial court to determine whether she qualifies for mental health diversion under Penal Code section 1001.36[1] and *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). She also argues remand is required for the court to determine if she has the ability to pay fines and fees imposed in this case, as set forth in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The instant appeal is from a negotiated disposition in 2019, where defendant entered into a plea agreement and was sentenced to prison. That disposition, however, was the culmination of multiple offenses and violations of probation and PRCS, as set forth below.

### Case No. F10800255

On April 19, 2010, defendant was found in possession of methamphetamine. At the time, she had a long record that began in 1998 and continued with numerous felony and misdemeanor convictions for assaultive, drug, and theft offenses, and multiple probation and parole violations.

On or about July 10, 2010, defendant pleaded guilty in case No. F10800255 to possession of methamphetamine (Health & Saf. Code, § 11377).

On or about July 21, 2010, defendant was placed on probation for two years pursuant to Proposition 36. Defendant never reported to probation and absconded.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

## COMMISSION OF ADDITIONAL OFFENSES

### Case No. 12903625

On July 15, 2011, defendant was detained by a security officer at Table Mountain Casino because she had been banned from the facility as of February 8, 2011. Defendant was found in possession of a white powdery substance and a glass pipe in her purse. Defendant grabbed the items, rushed into a nearby restroom, flushed the items down the toilet, and walked out of the casino.

Defendant was again detained and arrested. A further search of her purse revealed bank cards, DMV identification cards, and an iPod. The items belonged to two people, who reported defendant did not have their permission to possess their stolen property.

### Case No. F11907012

On November 22, 2011, officers stopped a car that was being driven by Ryan Gault; defendant was the passenger. The car contained a laptop computer, printer, jewelry, paperwork, and other items. Defendant said she purchased the vehicle, and the property in the car belonged to her.

The officers determined the car and property had been reported as stolen in different burglaries. There was a green bag in the car that contained paperwork in Gault's name, along with a paycheck, tax returns, and other types of paperwork, all of which also had been reported stolen in burglaries. The burglary victims did not know Gault, and one victim had been subject to identity theft.

Both defendant and Gault were arrested. At the time, defendant had absconded from her probation in case No. F010800255.[2]

_____

[2] Gault pleaded to a felony violation of taking or driving a vehicle (Veh. Code, § 10851) and was placed on probation for three years.

### *Probation report*

According to the December 12, 2011, probation report, filed for defendant's violation of probation in case No. F010800255, defendant had multiple pending cases in other counties at that time. The report stated defendant was disabled due to epilepsy and mental health issues. Her disability checks were sent to a designated payee, who was her boyfriend's mother.

Also, according to the probation report, on May 17, 2011, criminal proceedings had been suspended pursuant to section 1368, in a Madera County case where defendant had been charged with violating section 487, subdivision (a), and she was placed in Patton State Hospital. Defendant was supposed to be transported to Patton by the person who was the payee on her disability checks, but defendant got out of the car and "took off." The probation report stated that this and other cases were still pending against defendant, and the jurisdictions had been advised defendant was in custody in Fresno County.

The probation report stated defendant was born with epilepsy and took antiseizure medications. She began having mental health issues when she was 27 years old and was diagnosed as being bipolar and schizophrenic. She took "numerous psychotropic medications" but the jail was not administering them to her. Defendant said that since she was in a "controlled setting," she was not having any problems with paranoia or hearing voices.

The report further stated that defendant had a long history of using methamphetamine on a daily basis, which began when she started having mental health problems after her mother's death. Defendant stated that in the previous five years, she had completed one treatment program and failed to complete another program.

## Procedural background

On January 25, 2012, the court ordered a psychological evaluation of defendant pursuant to section 1368 because a doubt arose as to her competency.

On April 18, 2012, defendant was found not competent to assist in her defense, criminal proceedings in cases Nos. 12903625 and F11907012 were suspended, and she was committed to Patton State Hospital.

On August 27, 2012, the court found defendant was restored to competency and criminal proceedings were reinstated, and the matter was set for a hearing on her probation violation.

The probation report for cases Nos. 12903625 and F11907012 described defendant's prior performance on probation and parole as "miserable." Defendant had "neither the desire, nor the ability to comply with supervision within the community. In reviewing her prior PC 1368 and 1026 evaluations, her long use of methamphetamine abuse has contributed to [her] psychological state. She was given the opportunity with Prop 36 services, but did not enroll in the program and did not drug test. Conversely, the defendant was able to obtain stolen financial information from unsuspecting victims and commit new offenses just after her release." It recommended imposition of a prison term.

**Plea and sentencing**

On September 20, 2012, defendant entered into a negotiated disposition. In case No. F11907012, she pleaded no contest to unlawfully taking or driving a vehicle (Veh. Code, § 10861, subd. (b)) and admitted one prior strike conviction; and in case No. F1290362, she pleaded no contest to receiving stolen property (Pen. Code, § 496, subd. (a)). The court dismissed the other charges and allegations.

On November 2, 2012, the court imposed an aggregate term of four years for defendant's three cases: two years eight months in case No. F11907012, and a consecutive term of one year four months in case No. F1290362; with a concurrent term for the probation violation in case No. F10800255.

## FIRST PETITION FOR REVOCATION

On July 30, 2013, defendant was released on PRCS that would terminate in July 2016.

On January 23, 2014, the probation department attempted to contact defendant at her registered home address in Clovis, but her son reported defendant had not lived there in months, and he did not know her whereabouts.

On February 7, 2014, defendant was detained during a traffic stop, she gave a false name and was uncooperative, and she tossed away a bag of marijuana. She was arrested for giving a false identity to an officer (§ 148.9), resisting arrest (§ 148, subd. (a)(1)), and revocation/violation of PRCS (§ 3455, subd. (a)).

Based on these incidents, on February 20, 2014, the probation department filed a petition in case No. F14900092-2, for revocation of defendant's PRCS in cases Nos. F11907012, F12903625, and F10800255, because she failed to maintain contact and obey all laws. The court found probable cause and preliminarily revoked defendant's PRCS status.

On July 14 and September 15, 2014, defendant failed to appear for hearings in case No. F14900092-2, and no-bail arrest warrants were issued.

On January 21, 2015, defendant appeared in case No. F14900092-2, and she was remanded into custody. The court ordered this case to trail pending charges in case No. F14908547.

**Case No. F14908547**

On April 16, 2015, defendant admitted violating the terms of her PRCS in case No. F14908547; she was released on her own recognizance.

On June 29, 2015, the court reinstated defendant on PRCS with a new expiration date of November 2017.

## SECOND PETITION FOR REVOCATION

Defendant's current appeal is based on the negotiated disposition and the court's orders in cases Nos. F14900092-2 and F19901645.

On September 22, 2015, defendant failed to report to the probation office for a follow-up appointment. On November 5, 2015, a probation officer contacted defendant's

daughter, who reported defendant no longer lived at her stated address in Fresno. On December 12, 2015, defendant's son confirmed defendant did not live at that address, the home was searched, and defendant's whereabouts were unknown.

Based on these incidents, on January 12, 2016, the probation department filed another petition for revocation of defendant's PRCS status in case No. F14900092-2. The court granted the petition and issued a no-bail bench warrant.

## Case No. F19901645

On March 12, 2019, defendant appeared in court on the no-bail warrant, her PCRS was formally revoked, and she was remanded into custody. The case was trailed pending the filing of new charges.

On the same day, a complaint was filed in case No. F19901645 charging defendant with count 1, embezzlement of property valued over $950, between March 1 and 10, 2019, that had been entrusted to her by Chukou Xaochay Thao (§ 503); count 2, receiving stolen property, a motor vehicle valued over $950 that belonged to Thao (§ 496d, subd. (a)); count 3, unlawful driving or taking of a motor vehicle (Veh. Code, § 10851, subd. (a)); and, count 4, misdemeanor giving false information to a police officer (§ 148.9, subd. (a)).

It was further alleged as to counts 2 and 3 that defendant had one prior theft-related felony conviction (§ 666.5); one prior strike conviction; and two prior prison term enhancements (§ 667.5, subd. (b)).

## PLEA AND SENTENCING

On April 23, 2019, defendant entered a negotiated disposition in case No. F19901645, and pleaded no contest to count 1, embezzlement, and admitted the prior strike conviction and two prior prison term enhancements, based on an indicated second strike sentence of four years. The court granted the People's motion to dismiss the remaining charges and allegations.

7.

On the same day, defendant admitted violating the terms of PRCS in case No. F14900092, by failing to obey all laws. The court formally revoked defendant's PRCS status.

On May 21, 2019, the court conducted the sentencing hearing. Defense counsel requested the court to dismiss the prior strike conviction because it was from 2004, her current offenses were not violent, and she took responsibility for her conduct. The prosecutor replied that while the prior strike was old, defendant had nine subsequent parole violations that showed she could not comply with the law and continued to reoffend.

Defense counsel replied: "Your Honor, I would just note that there are significant substance abuse and *some mental health in her history* all would explain her numerous violations and many misdemeanor – her prior record." (Italics added.) As an alternative to dismissing the strike, defense counsel asked the court to consider imposing the lower term.

The court stated it had reviewed defendant's record and decided not to dismiss the prior strike conviction for the following reasons.

> "Prior to the strike [defendant] had a felony corporal injury on a spouse or cohabitant as a felony in '03. She had a felony assault with a deadly weapon which is a strike in '03. Unfortunately that was followed by nine parole violations from '06 to 2010. And then in 2010 there is a felony possession of methamphetamine which under current law is probably reducible to a misdemeanor. That was followed by a petty theft in '10, some sort of credit card theft in '10 as a misdemeanor, a felony receiving stolen property in '11 which she received 16 months in prison, as well as a misdemeanor credit card fraud. She received a felony auto theft in '11 which she received two years and eight months. That was followed by a violation of post release community supervision in '15, another possession of – unlawfully of someone's ID as a misdemeanor in '14, and then … out of Texas some sort of felony possession of a controlled substance as a felony."

The court stated this case represented defendant's eighth felony conviction, she was ineligible for probation, and she was not suitable in any case.

In case No. F19901645, the court imposed the midterm of two years for count 1, embezzlement, doubled to four years as the second strike term, and dismissed the two prior prison term enhancements.

The court imposed a restitution fine of $400 (§ 1202.4, subd. (b)), suspended the parole revocation fine of $400 (§ 1202.45), and reserved victim restitution; and also imposed a court operations fee of $40 (§ 1465.8) and a $30 criminal conviction assessment fee (Gov. Code, § 70373). It found she did not have the ability to repay the costs of representation and suspended the probation report fee of $296.

In case No. F14900092, the court imposed a concurrent term of 180 days in jail and ordered PCRS to terminate upon completion of the term.

**Appeal**

On May 22, 2019, defendant filed notices of appeal in cases Nos. F14900092 and F19901645.

On July 25, 2019, appellate counsel filed a request for the superior court to conduct a hearing on defendant's ability to pay the fines and fees pursuant to *Dueñas* and section 1237.2. On August 1, 2019, the superior court denied appellate counsel's request.

On September 12, 2019, defendant filed a request with this court for permission to seek a certificate of probable cause from the superior court, in order to raise her eligibility for mental health diversion pursuant to the provisions of section 1001.36. On October 1, 2019, this court denied defendant's motion.

## DISCUSSION

### I.     Certificate of Probable Cause

Defendant's primary issue is that the matter must be remanded for the trial court to consider whether she is eligible for mental health diversion pursuant to section 1001.36.

9.

In response, the People asserted that defendant was foreclosed from raising this issue because she failed to obtain a certificate of probable cause.

This court requested further briefing from the parties given recent rulings on this issue by the California Supreme Court. In response, the People concede that based on *Frahs* and *People v. Stamps* (2020) 9 Cal.5th 685, 696, defendant may raise this issue even though she did not obtain a certificate of probable cause. We accept this concession and address the merits of defendant's arguments.

## II.     Mental Health Diversion

Defendant argues the matter must be remanded for the court to consider whether she would be eligible for mental health diversion pursuant to section 1001.36, and asserts the record supports a prima facie case for diversion based on her history of mental health problems in 2011 and 2012, as set forth above in the probation report. Defendant acknowledges defense counsel failed to request diversion, but asserts counsel was prejudicially ineffective for failing to do so.

The People assert defendant forfeited this issue because section 1001.36 had been enacted months before she entered her plea and was sentenced, and her defense attorney failed to raise the issue or request diversion. The People further argue defendant cannot establish prejudicial ineffective assistance because the record is silent as to why counsel did not raise diversion during the pretrial proceedings but suggests reasons why the motion was not made. The People raise an additional contention that if the matter is remanded for the court to consider diversion, then the district attorney should be able to withdraw from the plea agreement. (See, e.g., *People v. Stamps, supra*, 9 Cal.5th at pp. 707–708.)

We find defendant forfeited review and reject her ineffective assistance argument.

### A. *Section 1001.36 and Frahs*

Effective June 27, 2018, "the Legislature enacted … sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health disorders.  [Citation.]"  (*Frahs, supra*, 9 Cal.5th at p. 624, fn. omitted.)

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders.  The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment ....'  (§ 1001.36, subd. (c).)"  (*Frahs, supra*, 9 Cal.5th at p. 626.)

Section 1001.36 provides that a trial court may grant pretrial diversion if it finds all of the following:  (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant factor in the commission of the charged offense; (3) in the opinion of a qualified mental health expert, the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community.  (§ 1001.36, subd. (b)(1)(A)–(F).)

Section 1001.36 was subsequently amended to specify that defendants charged with crimes such as murder, rape, and certain sexual assault offenses, are ineligible for diversion.  (§ 1001.36, subd. (b)(2); *Frahs, supra*, 9 Cal.5th at pp. 626–627.)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion.  [Citations.]  The maximum period of diversion is two years.  [Citation.]  If the defendant is subsequently charged with an additional crime,

11.

or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings.  [Citation.]  'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.'  [Citation.]"  (*Frahs, supra*, 9 Cal.5th at p. 627.)

In *Frahs, supra*, 9 Cal.5th 618, the California Supreme Court held section 1001.36 was fully retroactive to cases not yet final on appeal.  (*Frahs,* at p. 624.)  In that case, however, section 1001.36 was enacted after the defendant was convicted and sentenced, and while his appeal was pending.  (*Frahs*, at p. 626.)  *Frahs* held "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when[] … the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion – the defendant suffers from a qualifying mental disorder.  [Citation.]"  (*Id.* at p. 640.)

### B.      Forfeiture

In general, "a party may forfeit [the] right to present a claim of error to the appellate court if he did not do enough to 'prevent[]' or 'correct[]' the claimed error in the trial court [citation] ...."  (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)  "[C]ounsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing."  (*People v. Scott* (1994) 9 Cal.4th 331, 353.)  The defendant is the one who must raise the issue of diversion.  (§ 1001.36, subd. (b)(1)(A) ["Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert."].)

Defendant concedes there was no mention of mental health diversion or its application to defendant at the time of sentencing.  The new section 1001.36 was enacted on June 27, 2018, it had been in effect for nearly one year before defendant's negotiated plea and sentencing hearings in April and May 2019, and defendant has not shown the

statute imposes a sua sponte duty on the trial court to raise the issue of mental health diversion absent a request from either party. Thus, it was defendant's obligation to raise the issue. The failure to do so forfeits the issue on appeal.

### C. *Ineffective Assistance*

We thus turn to defendant's alternative claim of ineffective assistance. "To show ineffective assistance, defendant must show that 'counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*People v. Woodruff* (2018) 5 Cal.5th 697, 761–762.)

"On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. [Citations.]" (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"In determining whether the significance of a change in the law excuses counsel's failure to object at trial, we consider the 'state of the law as it would have appeared to competent and knowledgeable counsel at the time of trial.' [Citation.]" (*People v. Black* (2007) 41 Cal.4th 799, 811, overruled on other grounds by *Cunningham v. California* (2007) 549 U.S. 270.)

There are practical constraints that make it more difficult to address ineffective assistance claims on direct appeal as opposed to a habeas corpus proceeding. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) First, "[t]he record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a

particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable. [Citation.]" (*Ibid.*)

Second, in evaluating trial counsel's actions, "[a] court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 541.) Thus, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy under the circumstances. (*Ibid.*) "The constitutional standard of performance by counsel is 'reasonableness,' viewed from counsel's perspective at the time of his challenged act or omission. [Citations.]" (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1243–1244, superceded by statute on other grounds as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.) This burden has been described as " 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission. [Citation.]" (*People v. Mickel, supra*, 2 Cal.5th at p. 198.)

Defense counsel was aware of defendant's mental health issues since he cited to her prior history when he asked the court to dismiss the prior strike conviction. The record is silent as to whether counsel was also aware of section 1001.36. While defendant argues there was no tactical reason to excuse defense counsel's failure to move for mental health diversion, counsel could have chosen not to request diversion for a variety of reasons – he could have discussed the matter with defendant, and she may have refused to consent to diversion or comply with mental health treatment. (§ 1001.36, subds. (b)(1)(D) & (E).)

"An appeal is 'limited to the four corners of the [underlying] record on appeal' " (*People v. Waidla* (2000) 22 Cal.4th 690, 703, fn. 1), and defendant's ineffective assistance claim would be more appropriately pursued in a habeas corpus proceeding. (*People v. Mai, supra*, 57 Cal.4th at p. 1009.) Given the nature of the record, there are

legitimate reasons why defense counsel may have chosen not to pursue a mental health diversion eligibility hearing on defendant's behalf, and we cannot conclude defense counsel's performance was objectively unreasonable.

## III.    The Restitution Fine and Fees

Defendant next contends the court improperly ordered her to pay the restitution fine and fees without determining her ability to pay as required by *Dueñas*, and again raises ineffective assistance to the extent counsel should have objected to the restitution fine.

We first note that the sentencing hearing was held a few weeks after *Dueñas* was decided.  But even before *Dueñas*, defendant had a statutory right to object to the $400 restitution fine since it exceeded the statutory minimum of $300, but she did not do so. (§ 1202.4, subds. (c), (d).)  Accordingly, we conclude defendant forfeited appellate review of his claim that the trial court erred when it imposed the restitution fine without determining his ability to pay.  (*People v. Montelongo* (2020) ___ Cal.App.5th ___ [274 Cal.Rptr.3d 267, 281–282]; *People v. Taylor* (2019) 43 Cal.App.5th 390, 399–400; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.)

In the alternative, defendant argues her attorney was prejudicially ineffective for failing to object based on *Dueñas*, which held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees.  (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167.)[3]

---

[3] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof.  (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

We disagree with the holding in *Dueñas*. As explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, at pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and thus not excessive under the Eighth Amendment. (*Aviles*, at p. 1072.)

Even if we agreed with *Dueñas,* defense counsel's failure to object based on that ruling was not prejudicial because defendant has the ability to pay the fines and fees over the course of her prison sentence. (*Aviles, supra*, 39 Cal.App.5th at pp. 1075–1077.) " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after [her] release from custody. [Citation.]' [Citations.]" (*Id*. at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fines and fees from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) In addition, there is nothing in the record to show that defendant would be unable to satisfy the fine and fees imposed by the court while serving her prison term, even if she fails to obtain a prison job. While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support her inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during her prison sentence. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

While defendant was represented by appointed counsel at trial, and not ordered to repay the costs of his representation, the absence of such an order does not address the same issues raised by his ability to pay the restitution fine and fees imposed in this case. Section 987.8 states that a court may order a defendant to reimburse the government for the costs of court-appointed counsel if the defendant has the ability to repay such amount. (§ 987.8, subds. (b), (c)(1).) "[T]here is 'a presumption under the statute that a defendant sentenced to prison does not have the ability to reimburse defense costs.' [Citation.] To rebut this presumption, there must be 'unusual circumstances.' [Citation.] And the court 'must make an express finding of unusual circumstances before ordering a state prisoner to reimburse his or her attorney.' [Citations.]" (*People v. Rodriguez* (2019) 34 Cal.App.5th 641, 646.)

Section 987.8 carries a specific statutory presumption that a defendant sentenced to more than one year in prison or county jail does not have the ability to reimburse defense costs. Such a statutory presumption does not apply to whether he had the ability to pay the statutorily mandated restitution fine and fees. (§ 987.8, subd. (g)(2)(B); *Aviles, supra*, 39 Cal.App.5th at pp. 1074–1075; *People v. Rodriguez, supra,* 34 Cal.App.5th at p. 646.)

We thus conclude that based on the record before this court, defendant has the ability to pay the fines and fees, and counsel's failure to object was not prejudicial.

**DISPOSITION**

The judgment is affirmed.

17.